# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                                        **NO. 14-168**

**ANDRE ADDISON**                                          **SECTION I**

## ORDER AND REASONS

The Court has pending before it a motion[1] filed by defendant, Andre Addison ("Addison"), to dismiss and/or to sever his trial from that of his co-defendants. The government has filed an opposition,[2] and Addison has filed a reply.[3] This matter is now ripe for decision.

## BACKGROUND

These motions implicate both the above-captioned matter and an earlier-filed criminal case pending in this district against Addison. *See United States v. Byron Evans, et al.*, No. 13-137 (filed May 30, 2013) (Milazzo, J.) ("*Evans*"). In *Evans*, Addison was initially charged in a superseding indictment filed on August 2, 2013, with one count of conspiracy to distribute and to possess with the intent to distribute one (1) kilogram or more of heroin and 500 grams or more of cocaine hydrochloride in violation of 21 U.S.C. § 846,[4] and two counts of using a communication facility in committing, causing, and facilitating the commission of a drug offense, in violation of 21 U.S.C. § 843(b).[5] Subsequently, a one-count second superseding bill of information was issued on July 8,

---

[1]R. Doc. No. 152.
[2]R. Doc. No. 158.
[3]R. Doc. No. 165.
[4]*Evans*, R. Doc. 24, at 2.
[5]*Evans*, R. Doc. No. 24, at 4-5.

1

2014, charging Addison with a single count of possession with the intent to distribute one hundred grams or more of a mixture or substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).[6]

On July 8, 2014, Addison pleaded guilty to the one-count second superseding bill of information.[7] The factual basis for Addison's plea stated as follows:

> Count 1 - Drug Trafficking Conspiracy[8]
> From on or about January 4, 2013, to on or about January 6, 2013, ADDISON communicated via cell phone with Byron Evans in order to coordinate the purchase and receipt of approximately nine (9) ounces of heroin from Byron Evans. On or about January 6, 2013, ADDISON received nine (9) ounces of heroin in the Eastern District of Louisiana from a drug courier sent by Byron Evans. ADDISON intended to distribute the nine (9) ounces of heroin.[9]

Addison pleaded guilty pursuant to a plea agreement which stated that in exchange for his guilty plea, the government would "request that the Court dismiss any and all remaining charges currently pending against the defendant at the time of sentencing."[10] However, the agreement also stated that it "does NOT preclude the Government from charging the defendant with additional violations of Federal Law, including but not limited to violations of the Controlled Substances Act."[11]

---

[6]*Evans*, R. Doc. No. 395, at 1. The second superseding bill of information contains a notice of drug forfeiture. *Evans*, R. Doc. No. 395, at 2. The record in *Evans* does not reflect a first superseding bill of information as to Addison, but there were superseding bills of information as to co-defendants Robert Leon Johnson and Davon Christopher Mosley, R. Doc. No. 289, and Franklin Phillip, R. Doc. No. 350.

[7]*See Evans*, R. Doc. No. 399, at 1-2.

[8]Although the heading in the factual basis states "Drug Trafficking Conspiracy," this is incorrect because Addison pleaded only to a substantive count of possession with intent to distribute heroin.

[9]*Evans*, R. Doc. No. 398, at 1.

[10]*Evans*, R. Doc. No. 397, at 1.

[11]*Evans*, R. Doc. No. 397, at 1.

At his rearraignment on July 8, 2014, Addison at first expressed his intent to plead guilty to count one of the second superseding bill of information.[12] During the colloquy conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, Assistant U.S. Attorney ("AUSA") J. Collin Sims explained the plea agreement:

> MR. SIMS: Yes, Your Honor. In exchange for the Defendant's agreement to plead to Count 1 of the Second Superseding Bill of Information, the Government will request that the Court dismiss any and all remaining charges currently pending against the Defendant at the time of sentencing.
> This Plea Agreement does not preclude the Government from charging the Defendant with additional violations of federal law, including, but not limited to, the violation of the Controlled Substances Act.[13]

Later, in response to the court's questions, Addison asked about the plea agreement provision reserving the government's right to bring additional charges:

> THE COURT: Do you have any questions?
> THE DEFENDANT: Yes, ma'am, I have a question for you. Dealing – dealing with this case, can the Government come back and indict me on any other charges contained in this case?
> MR. SIMS: Contained in this case?
> THE DEFENDANT: Yes.
> MR. SIMS: The Government, by way of –
> THE COURT: Mr. Sims, I think what he wants you to make a representation to him, instead of – he was charged with multiple counts in the initial Indictment, and he's now pleading guilty to a Second Superseding Indictment, but there is language in it that says that you can bring other charges.
> I think what he's asking you to represent to him in court is whether or not there is any indication that you will bring charges that were perhaps identified in the initial Indictment or First Superseding Bill of Information.
> MR. SIMS: Any charges that the Government would bring against Mr. Addison, if we brought additional charges, would be on a different conspiracy and different violation.
> To be very clear, the Government does not agree not to charge him with any other violations of federal law, including violation of the Controlled Substances Act.
> So outside of this possession with the intent to distribute charge, the

---

[12]*Evans*, R. Doc. No. 416, at 5.
[13]*Evans*, R. Doc. No. 416, at 16.

Government is free to, by way of this Plea Agreement, free to charge him with any other violations of federal law. The Government does not agree not to do that.

THE COURT: Mr. Sims, I think the question is whether the Government intends to charge him with any violations that were included in the initial Indictment in the First Superseding Bill of Information.

MR. SIMS: That's too generic of a question to answer. The only way I could answer is to say that the Government will not charge this Defendant of a conspiracy with the individuals listed in that Indictment.

MR. SHLOSMAN:[14] Judge, to be perfectly candid with the Court, the way I answered that question when he posed it to me yesterday afternoon was that the Government is not going to be charging him with another crime stemming out of the same set of facts as this case.

MR. SIMS: Correct. The violations are the same. I'm talking about a controlled substances conspiracy is still on the table, just not with these particular defendants out of these particular facts and circumstances.

THE COURT: Does that answer your question?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you satisfied with that response?

THE DEFENDANT: No.

THE COURT: What is it that you're not clear about?

THE DEFENDANT: I had – I had discussed with my lawyer over at the jailhouse when he come to see me about what I wanted in my Plea Agreement, and we discussed that, and that's why I asked you a question before – before I went over it with my lawyer and Mr. Sims. So that's what I wanted to know about the bringing additional charges on me.

THE COURT: Okay. I just want to make sure we're not talking in so much legalese that we're losing you.

As I appreciate what Mr. Sims has represented to the Court and what the Plea Agreement clearly states is that he can bring charges against you for violation of federal laws, including the controlled substances law, but there was no intent or they will not bring charges related to the facts of this case, that is, the initial conspiracy charged in this Indictment.

THE DEFENDANT: Right.

THE COURT: All right. Is that not satisfactory?

THE DEFENDANT: Yes, ma'am. Yes, ma'am.

THE COURT: All right. Do you understand?

THE DEFENDANT: Yes, ma'am.

THE COURT: Sir, you were charged in this Indictment with conspiracy to distribute heroin with Mr. Byron Evans and others, and there are some detailed facts laid out in that initial Indictment.

What I'm understanding, I'm going to ask Mr. Sims to represent that on the

---

[14]Counsel for Addison at that time.

record so that we're all on the same page, there is no intent to charge you with violation of controlled substances that come from that set of facts that is identified in the Indictment of this case in the First Superseding Bill of Information, but all bets are off related to any other criminal activity, including controlled substances law.

Have I correctly represented what I understand the agreement to be?

MR. SIMS: Yes, the Government agrees not to charge him with a controlled substances conspiracy arising out of the same facts that brought this original conspiracy charge.

THE COURT: Are you okay, Mr. Addison? Do you have any questions? Because this is very, very important. I want to make sure that there are no questions left that – and if you need time to talk to Mr. Shlosman, that's fine, but I want to make sure that you understand everything that we're talking about here.

MR. SIMS: I could be more specific too. The Government will not charge you with any charges stemming from your activities from your conspiring with Byron Evans and the members of that drug-trafficking organization that you were charged with in that Indictment.

THE DEFENDANT: Can you give me a recess?

THE COURT: Sure. Talk to Mr. Shlosman and we'll take a few minutes.

THE DEFENDANT: All right.

(WHEREUPON, at this point in the proceedings, there was an off-the-record discussion.)

MR. SHLOSMAN: Judge, after speaking with Mr. Addison, he is not comfortable with the language in his Plea Agreement as far as the Government not relasing him of any and all possibilities of future indictments in the Eastern District; so, since they are unwilling to take that language out, Mr. Addison wants to stop the proceedings.[15]

After another brief recess, Addison withdrew his intent to plead guilty and asserted that he did not understand the plea agreement:

THE COURT: Come forward, Mr. Addison. Is there a motion to withdraw or are we proceeding?

MR. SHLOSMAN: No, ma'am, we are going to withdraw Mr. Addison's intention to plead guilty today, Judge. . . .

THE COURT: Okay.

THE DEFENDANT: Can I speak?

THE COURT: Yes, sir.

THE DEFENDANT: Yes, ma'am. I want to apologize you and the Court, and when I asked you to explain that to me, that's why you asking me and I understood it then, so the only reason I signed that because I thought that I was doing something

---

[15] *Evans*, R. Doc. No. 416, at 19-23.

that I did not understand, so I did not understand that Plea Agreement, so that's why I signed it.[16]

The court adjourned and then reconvened later in the day:

THE COURT: Okay. All righty. We are here, as I appreciate it, as Mr. Addison has had a change of heart; so, Mr. Addison, I've been informed that you have decided to enter a plea to continue with the plea of guilty?

THE DEFENDANT: Yes, ma'am.

THE COURT: Now, when we last met, you indicated that you signed the Plea Agreement, but you did not understand what you were signing, and I just want to make sure that you do understand everything that's signed. Have you reviewed the Plea Agreement again?

THE DEFENDANT: Yes, ma'am.

. . . .

THE COURT: Now, in the Plea Agreement what I think caused you concern was the Government has indicated that they are free to pursue other criminal charges against you, even those related to controlled substances. Do you understand that?

THE DEFENDANT: Can you explain it to me.

THE COURT: Okay. That's where it fell apart this morning.

THE DEFENDANT: Yes.

THE COURT: Pursuant to the Plea Agreement, there was language – and let me go ahead and get my copy of the Plea Agreement out so that I can read exactly what the language is and make sure that everyone understands what this language means.

This is on the second paragraph of the first page of the Plea Agreement. It says, the Government has agreed that should the Court accept the Defendant's plea of guilty to Count 1 of the Second Superseding Bill of Information, the Government will request that the Court dismiss any and all remaining charges currently pending against the Defendant at the time of sentencing.

So they want to dismiss the charges that are currently pending, if I accept the plea of guilty, and that would be those charges that we talked about this morning related to the original Indictment, the conspiracy with Mr. Evans and the others, but it says the Plea Agreement does not preclude the Government from charging the Defendant with additional violations of federal law, including, but not limited to, violations of the Controlled Substances Act.

So what that paragraph means, and I expect counsel to object if there is any difficulty with my paraphrasing, what that paragraph means is if there are other violations that the Government – that are out there that the Government is not agreeing that they will not pursue those. That's too many *nots*.

So they are not going to pursue any further charges – any charges that were

_____

[16]*Evans*, R. Doc. No. 416, at 25-26.

currently pending against you that is related to Mr. Evans and the distribution of heroin in that thing, but they are saying that they are not going to waive the right to pursue other violations of federal law.

If there something you don't understand about that, I need you to ask me those questions, and we're going to go through this very clearly because I want to make sure that you understand.

MR. SIMS:[17] Yes, ma'am, I understand.

THE COURT: You do. Any questions?

THE DEFENDANT: No, ma'am.

THE COURT: Now is the time to ask, Mr. Addison, if you have any questions.

THE DEFENDANT: No, ma'am.

THE COURT: All right. So you understand that the Government is not agreeing to drop – to not pursue other charges against you?

THE DEFENDANT: Yes, ma'am.[18]

The rearraignment proceeded and Addison pleaded guilty to count one of the second superseding bill of information pursuant to the plea agreement.[19] Addison has not yet been sentenced in the *Evans* case.

One month after his guilty plea in *Evans*, on August 7, 2014, the grand jury returned the indictment in this case.[20] The grand jury later returned a superseding indictment on February 12, 2015.[21] Count one of the sixteen-count superseding indictment charges that between no later than January 1, 2010, and continuing until on or about November 20, 2013, Addison and all eleven co-defendants conspired to distribute and to possess with the intent to distribute one (1) kilogram or more of heroin and 280 grams or more of cocaine base, in violation of 21 U.S.C. § 846. Addison is not charged in any other count of the superseding indictment.[22]

---

[17]Based on the context of the exchange, this probably should read "THE DEFENDANT."

[18]*Evans*, R. Doc. No. 416, at 27-30.

[19]*Evans*, R. Doc. No. 416, at 29-33.

[20]R. Doc. No. 1.

[21]R. Doc. No. 174.

[22]Addison was also charged only in count one of the fifteen-count original indictment. R. Doc. No. 1, at 2.

Against this backdrop, Addison filed this motion to dismiss and/or to sever.[23] He contends that double jeopardy as well as the terms of the *Evans* plea agreement preclude the government from charging him in this conspiracy to the extent that this conspiracy charge is based on the same nine ounces of heroin that served as a factual basis in the *Evans* case.[24] In the alternative, Addison contends that he will be prejudiced if his trial on the drug conspiracy charged in count one of the superseding indictment is not severed from the trial of the gun and violence related charges filed against certain co-defendants.[25] The government opposes all relief requested by Addison.[26]

## LAW & ANALYSIS

### A.    Motion to Dismiss

Addison moves to dismiss count one of the superseding indictment in this case as to him. He predicates this motion on his guilty plea and plea agreement in *Evans*, and he couches the argument in terms of both double jeopardy and a breach of the plea agreement.

### 1.    Double Jeopardy

"The Fifth Amendment's Double Jeopardy Clause protects against a second prosecution for the same offense after conviction." *United States v. El-Mezain*, 664 F.3d 467, 546 (5th Cir. 2011) (internal quotation marks omitted). "In applying the protections against a second prosecution and a second punishment, the traditional focal point of double jeopardy analysis has been the 'offense' for which the defendant is prosecuted and punished–not the conduct criminalized by, or related to, that offense." *United States v. Cruce*, 21 F.3d 70, 72 (5th Cir. 1994). The test for whether "the same

---

[23]R. Doc. No. 152.
[24]R. Doc. No. 152-1, at 3-6.
[25]R. Doc. No. 152-1, at 7-11.
[26]R. Doc. No. 158.

act or transaction constitutes a violation of two distinct statutory provisions . . . is whether each requires proof of a fact which the other does not." *United States v. Tovar*, 719 F.3d 376, 382 (5th Cir. 2013) (internal quotation marks and alteration omitted). "Convictions for both conspiracy and the substantive offense that is the object of the conspiracy generally do not constitute double jeopardy, even when prosecuted under separate indictments." *United States v. Martinez-Gill*, No. 92-5626, 1994 WL 395053, at *13 (5th Cir. July 7, 1994) (affirming convictions for both conspiracy to distribute heroin and distribution of heroin).

"Generally, when a defendant pleads guilty, jeopardy attaches at the time the guilty plea is accepted." *United States v. Jones*, 733 F.3d 574, 580 (5th Cir. 2013). Therefore, jeopardy has attached as to the count to which Addison pleaded guilty in *Evans*, and the government may not again prosecute him for possession with intent to distribute heroin based on that particular conduct. In this case, however, Addison is charged with conspiracy to distribute and to possess with the intent to distribute heroin and crack cocaine. Even if there would be "a substantial overlap in the proof offered to establish the[se] crimes," the possession with the intent to distribute count in the *Evans* case and the conspiracy count in this case require proof of different elements, so there is no double jeopardy violation. *See Tovar*, 719 F.3d at 383.

## 2.    Breach of Plea Agreement

Addison also argues that by charging him with conspiracy in this case, the government has breached the plea agreement in *Evans*. He demands specific performance of the plea agreement in the form of dismissal as to him of count one of the superseding indictment. Addison argues that, after agreeing to request dismissal of the *Evans* conspiracy charge in exchange for his guilty plea, the government should not be allowed to bypass its obligation by filing essentially the same

9

conspiracy again in a new case.[27] Addison contends that the *Evans* conspiracy and this conspiracy are one and the same.

According to Addison, the proof underlying his guilty plea to possession with intent to distribute heroin in *Evans* was his admitted acquisition of nine ounces of heroin and the government contends that the same "nine ounces of heroin were to be, and in fact were distributed [through Addison] to a member" of the conspiracy charged in this case.[28] The government's response to Addison's motion for a bill of particulars indicates that, at least in part, it intends to prove Addison's participation in this conspiracy based on his distribution of those same nine ounces of heroin to his co-defendant, Harry Smoot.[29]

"As the Supreme Court has made clear, 'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *United States v. Purser*, 747 F.3d 284, 290 (5th Cir. 2014) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). The Court must "construe the [plea] agreement like a contract, seeking to determine the defendant's reasonable understanding of the agreement and construing ambiguity against the Government." *United States v. Farias*, 469 F.3d 393, 397 & n.4 (5th Cir. 2006) (internal quotation marks omitted). "A defendant asserting a breach bears the burden of proving, by preponderance of the evidence, the underlying facts establishing a breach." *United States v. Laday*, 56 F.3d 24, 26 (5th Cir. 1995). However, "[t]he plea agreement is construed strictly against the Government as drafter of the agreement." *Purser*, 747 F.3d at 290.

The issue is whether Addison's plea agreement with the government in *Evans*, as reasonably

---

[27]R. Doc. No. 152-1, at 3.
[28]R. Doc. No. 152-1, at 2.
[29]R. Doc. No. 155, at 2.

understood by Addison, prohibits or otherwise constrains the government from pursuing the conspiracy charge in this case against him. If the conspiracy charged in this case is the same conspiracy charged in the *Evans* case, then it was "currently pending against" him when he pleaded guilty and it should be dismissed pursuant to the government's promise in the *Evans* plea agreement. However, even if the *Evans* and *Smoot* conspiracies are different conspiracies, the question remains whether Addison's reasonable understanding of the *Evans* plea agreement precludes the government from pursuing this conspiracy charge to the extent that it is based on the facts underlying his guilty plea in *Evans–i.e.*, the nine ounces of heroin.

### a.    Same or Different Conspiracies

The parties do not refer the Court to a test for determining a defendant's reasonable understanding of what constitutes the "same charge" for the purpose of determining compliance with a plea agreement. The Court finds it appropriate to adapt the test from the double-jeopardy context for deciding if a defendant has been charged with one or two conspiracies.[30] *See United States v. Wittie*, 25 F.3d 250, 262-63 (5th Cir. 1994) (applying a double-jeopardy analysis to conclude that defendant "clearly has not been indicted for the same conspiracy count that was dismissed pursuant to the plea agreement").

When deciding if a subsequent prosecution is for the same conspiracy or for a different conspiracy, "the central issue . . . is whether there was one agreement and one conspiracy or more than one agreement and more than one conspiracy." *El-Mezain*, 664 F.3d at 546. "To determine whether the alleged conspirators entered into more than one agreement, [the Court] evaluate[s] five

---

[30]To reiterate, the Court is analyzing whether the *Evans* and the *Smoot* conspiracies are the same conspiracy because the government agreed to dismiss the *Evans* conspiracy charge as to Addison, not because double jeopardy has attached as to that charge.

factors: 1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the government or any other description of the offense charged that indicates the nature and scope of the activity that the government sought to punish in each case; and 5) places where the events alleged as part of the conspiracy took place." *Id.* "Because no single factor is determinative, [the Court] must consider them all." *Id.*

### i.      Time

"'An overlap in time periods between two alleged conspiracies favors a finding of a single conspiracy, especially when that overlap is substantial.'" *El-Mezain*, 664 F.3d at 547 (quoting *United States v. Rabhan*, 628 F.3d 200, 205 (5th Cir. 2010)). The superseding indictment in *Evans* charged a conspiracy lasting from "a date unknown, but not later than June 1, 2011, and continuing until on or about May 29, 2013."[31] The superseding indictment in this case charges a conspiracy lasting from "a date unknown, but not later than January 1, 2010, and continuing until on or about November 20, 2013."[32] Accordingly, the alleged duration of the *Evans* conspiracy is entirely contained within the alleged duration of the *Smoot* conspiracy. Because the time period for one conspiracy is "wholly contained within the time period charged" for another conspiracy, that overlap is "substantial and favors a finding of a single conspiracy." *Id.* at 546-47.

### ii.      Persons Acting as Co-conspirators

"An overlap in personnel participating in conspiracies tends to indicate a single conspiracy." *Id.* at 547. On the other hand, "[i]f the central figures of the cases are different, or if they serve different functions for the purposes of the conspiracies, it is less likely that there is a single

---

[31]*Evans*, R. Doc. No. 24, at 2.
[32]R. Doc. No. 174, at 2.

agreement." *Id.*

The *Evans* superseding indictment charged Addison and fourteen co-defendants with conspiracy.[33] The *Smoot* superseding indictment charges Addison and eleven different co-defendants with conspiracy.[34] Addison is the only defendant charged in both indictments. More importantly, he concedes that "the key players in each conspiracy are different," although he contends that *his* role was the same in both conspiracies: "allegedly distributing heroin from one conspiracy to the other."[35]

On the present state of the record, based on the fact that Addison is the only defendant common to both charged conspiracies and that Addison admits that each conspiracy has different "key players," the Court concludes that this factor does not weigh in favor of a finding that the *Evans* conspiracy and the *Smoot* conspiracy are a single conspiracy.

### iii.    Statutory Offenses

Alleged violations of similar statutory offenses may support a finding of a single conspiracy. *See id.* at 548 (finding different statutory offenses to be "the same or similar" because "both prohibit support for designated terrorist organizations"). On the other hand, the Court "must be mindful that it is possible to have two different conspiracies to commit exactly the same type of crime." *Id.* (internal quotation marks omitted).

As stated, the *Evans* superseding indictment charged conspiracy to distribute and to possess with the intent to distribute one kilogram or more of heroin and 500 grams or more of cocaine hydrochloride.[36] The *Smoot* superseding indictment charges conspiracy to distribute and to possess

---

[33]*Evans*, R. Doc. No. 24, at 2.
[34]R. Doc. No. 174, at 2.
[35]R. Doc. No. 152-1, at 5.
[36]*Evans*, R. Doc. No. 24, at 2.

with the intent to distribute one kilogram or more of heroin and 280 grams or more of cocaine base.[37]

The statute alleged to have been violated, 21 U.S.C. § 846, is the same in both conspiracies. The controlled substances involved and the alleged amounts partially overlap (one kilogram or more of heroin in both conspiracies) and partially do not (500 grams or more of cocaine hydrochloride in *Evans* and 280 grams or more of cocaine base in *Smoot*). The Court concludes that, on the present state of the record, this factor is just as consistent with a single conspiracy to violate the controlled substances laws as it is with two separate conspiracies to violate the controlled substances laws.

### iv. Overt Acts

This factor examines "the overt acts charged by the government or any other description of the offense charged that indicates the nature and scope of the activity that the government sought to punish in each case." *El-Mezain*, 664 F.3d at 546. "Although . . . a single conspiracy may be found even without overlapping acts, the 'nature and scope of the allegedly separate conspiracies' must permit a finding that there was a single objective and *a single agreement*." *Id.* at 549 (emphasis added).

Neither superseding indictment charges any overt acts in furtherance of either § 846 conspiracy, and indeed the statute does not require proof of an overt act. *See Turner*, 319 F.3d at 721. The government characterizes the *Evans* conspiracy as "involv[ing] Columbian [sic] sources of supply selling to Byron Evans, a former resident of New Orleans who lived in Houston, who then used Megabus to ship the drugs back to dealers in New Orleans."[38] The government characterizes the conspiracy in this case as involving unrelated conduct[39] and it asserts that it will prove Addison's

---

[37]R. Doc. No. 174, at 2.
[38]R. Doc. No. 158, at 3.
[39]R. Doc. No. 158, at 5.

14

participation in the drug conspiracy charged in this case with evidence of "numerous acts over a period of years."[40] Addison concedes that "each conspiracy covers a different set of operating facts and players."[41]

Nonetheless, Addison tries to tie the two conspiracies together by emphasizing that the "common link to both" conspiracies is "Addison and his nine ounces of heroin."[42] The government makes no secret of its intent to introduce the nine ounces of heroin as evidence against Addison at the upcoming trial, but it parses this evidence into separate incidents which it contends are admissible for different purposes.[43] The government contends that Addison's purchase and receipt of the nine ounces of heroin from Evans, as set forth in his factual basis supporting his guilty plea in *Evans*, is admissible against Addison in this case as evidence of another crime pursuant to Rule 404(b) of the Federal Rules of Evidence.[44] But the government also contends that Addison's alleged solicitation of co-defendant, Harry Smoot, to distribute the nine ounces of heroin on his behalf, is admissible against Addison as intrinsic evidence in furtherance of the conspiracy charged in this

---

[40]R. Doc. No. 158, at 4.

[41]R. Doc. No. 165, at 2.

[42]R. Doc. No. 165, at 2.

[43]Specifically, the government includes the following statements in its list of evidence the government contends is intrinsic to the conspiracy charged in this case:

> In early January 6, 2013, Andre ADDISON received nine ounces of heroin in the company of Harry SMOOT. On July 8, 2014, Defendant Andre ADDISON signed a factual basis and entered a plea of guilty to Count One of the Superseding Bill of Information in [*Evans*]. This is 404(b) evidence as to ADDISON, and intrinsic evidence as to Harry SMOOT.
>
> On or about January 6, 2013, ADDISON was arrested before he could sell the heroin he received in early January 2013. ADDISON, from jail, then solicited Harry SMOOT to distribute the heroin on ADDISON's behalf.

R. Doc. No. 211, at 7-8.

[44]R. Doc. No. 211, at 7-8.

case.[45]

This proposed use of the nine ounces of heroin at trial, though problematic for other reasons that will be explained later, does not suggest that the *Evans* and *Smoot* conspiracies are the same criminal agreement. Evidence offered to prove an earlier conspiracy may be introduced at a trial of a later conspiracy pursuant to Rule 404(b) without implying that the two conspiracies are the same. *See El-Mezain*, 664 F.3d at 550; *see also United States v. Deshaw*, 974 F.2d 667, 675 (5th Cir. 1992) ("[A]dmission of evidence for [Rule] 404(b) purposes does not constitute 'prosecution' and thus, double jeopardy principles are not implicated."). In addition, Addison's factual basis in the *Evans* case does not mention Smoot or any other link to the conspiracy charged in this case.[46] Nothing in the record suggests any other link or common agreement.[47]

Moreover, Addison cites nothing in the record or caselaw to suggest that the mere movement of the same nine ounces of heroin from Evans through Addison to Smoot necessarily implies a single conspiracy. Addison contends that "[e]veryone in the buying/selling chain is part of the *same* conspiracy."[48] However, the case which he cites, *United States v. Ramos*, is a fact-specific opinion addressing the factual sufficiency of two defendants' § 846 conspiracy convictions and it does not stand for such a broad categorical proposition. *See id.* at 305-06; *see also id.* at 303 (describing one

---

[45]R. Doc. No. 211, at 8.

[46]*Evans*, R. Doc. No. 398, at 1.

[47]The government states in its Rule 404(b) notice that Addison received the nine ounces of heroin "in the company of Harry SMOOT," R. Doc. No. 211, at 7, a fact omitted from the factual basis in *Evans*. This bare allegation is not explained further and standing alone it does not suggest that Addison purchased and received the nine ounces of heroin from Byron Evans pursuant to an agreement that Addison had with Smoot.

[48]R. Doc. No. 165, at 3 (emphasis in original) (citing *United States v Ramos*, 545 F. App'x 301 (5th Cir. 2013)).

defendant's participation in a 5,000-member gang "as background only").[49]

Addison concedes that the *Evans* and *Smoot* conspiracies cover "a different set of operating facts and players," and the present record does not necessarily suggest that the nine ounces of heroin moved pursuant to a single agreement encompassing both charged conspiracies. Furthermore, the government's assertion that it will prove the conspiracy in this case against Addison with "extensive" evidence not at issue in *Evans* also suggests that the government seeks to punish different conduct as to the different conspiracies. Accordingly, the Court concludes that this factor weighs against a finding that the *Evans* and *Smoot* conspiracies are a single criminal agreement.

### v.      Place

The "geographic analysis can be guided by a consideration of how the crime at issue is usually committed." *United States v. Duffey*, 456 F. App'x 434, 441 (5th Cir. 2012). "When two alleged conspiracies overlap geographically, it is appropriate to consider where they are based as an indicator of whether the geographic overlap is significant." *Rabhan*, 628 F.3d at 208. In *El-Mezain*, the Fifth Circuit looked both to the location of the conspiracy as alleged in the indictments (the Northern District of Texas), as well as additional details regarding "where both corporate entities and most of the defendants were located" to conclude that "the place of decision making in both cases was the same, which militates in favor of finding a single conspiracy." 664 F.3d at 550-51. In *United States v. Delgado*, on the other hand, the Fifth Circuit concluded that two conspiracies

---

[49]The other cases Addison cites, *United States v. Beacham*, 774 F.3d 267 (5th Cir. 2014), and *United States v. Payne*, 99 F.3d 1273 (5th Cir. 1996), also do not support his insistence that the two charged conspiracies are in fact the same agreement. Both *Beacham* and *Payne* address the factors to be considered when determining whether evidence supports a finding that multiple defendants participated in one or more conspiracy. *See Beacham*, 774 F.3d at 274; *Payne*, 99 F.3d at 1280. But neither case is factually applicable to this case.

17

were distinct in part because one "concerned large-scale marijuana smuggling from Mexico into El Paso, with subsequent distribution to various locations, mostly in Texas," while the other "also involved marijuana smuggling from Mexico into El Paso" but also "concerned conspiratorial activity in Phoenix and Oklahoma City." 256 F.3d 264, 273 (5th Cir. 2001)

As Addison points out,[50] both conspiracies are alleged to have operated "in the Eastern District of Louisiana, and elsewhere."[51] The government elaborates slightly on those generic venue allegations by representing that the *Evans* conspiracy "involved drugs being transported from Houston and distributed in the greater New Orleans area," while the *Smoot* conspiracy allegedly "focuses primarily on activities in the Westbank."[52] Addison does not contest or controvert those geographic assertions.

Both conspiracies are charged in identical, vague, ambiguous geographic terms. The government attempts to place the *Evans* conspiracy and the *Smoot* conspiracy in different parts of this district, but its assertions are similarly cursory. The government's assertion of a conspiracy involving distribution "in the greater New Orleans area" would seem to encompass "activities in the Westbank." However, on the present undeveloped state of the record, the overlapping geographical descriptions of the two conspiracies make this an inconclusive factor.

### vi.    Analysis

"The five factors are for the guidance of the court, and the Government need not show that each of the factors demonstrates the existence of more than one conspiracy." *El-Mezain*, 664 F.3d

---

[50]R. Doc. No. 152-1, at 5.

[51]R. Doc. No. 174, at 2; *Evans*, R. Doc. 24, at 2.

[52]R. Doc. No. 158, at 8; *see also* R. Doc. No. 158, at 10 ("The central purpose of this entire [*Smoot*] conspiracy was the distribution of cocaine base and heroin in and around the Avondale and Scottsdale areas of the Westbank of Jefferson Parish, as charged in Count One.").

at 551. Three of the five factors are not particularly compelling under these circumstances. The overlapping time periods weigh slightly in favor of a finding that the *Evans* and *Smoot* conspiracies are the same conspiracy. The slightly different allegations with respect to the statutory offenses of the respective § 846 conspiracies, on the other hand, are equally consistent with a single conspiracy as with multiple conspiracies. The geographic factor is inconclusive.

The co-conspirator and overt act factors, on the other hand, for the reasons explained above, weigh more strongly against a finding that the two conspiracies are a single criminal agreement. Accordingly, the Court concludes that Addison has not established that the *Evans* and *Smoot* conspiracies are in fact the same criminal agreement for the purpose of enforcing the *Evans* plea agreement and dismissing the conspiracy count in this case. Addison's motion to dismiss count one of the superseding indictment for breach of the *Evans* plea agreement is therefore rejected.

### b.     Two Bites at the Nine Ounces of Heroin

Nonetheless, the Court is troubled by Addison's insistence that because he pleaded guilty to the substantive transaction surrounding the nine ounces of heroin and because the government contractually agreed to dismiss the *Evans* conspiracy that incorporated those nine ounces, the government cannot now incorporate these very same nine ounces into another conspiracy.[53]

The Court must enforce the plea agreement based on Addison's reasonable understanding of it. *E.g.*, *Purser*, 747 F.3d at 290. As noted above, Addison's plea agreement stated that "should the Court accept the defendant's plea of guilty to Count 1 of the Second Superseding Bill of Information, the Government will request that the Court dismiss any and all remaining charges currently pending against the defendant at the time of sentencing. This plea agreement does NOT

---

[53]R. Doc. No. 165, at 3.

preclude the Government from charging the defendant with additional violations of Federal Law, including but not limited to violations of the Controlled Substances Act."[54] Any ambiguity in this provision with respect to what additional charges the government can and cannot bring must be construed against the government and in Addison's favor. *See id.*

Without deciding whether the plain language of the *Evans* plea agreement is ambiguous, the Court is convinced that it was ambiguous *as it was explained to Addison* at his rearraignment. First, Addison expressly vocalized his confusion and asked "can the Government come back and indict [him] on any other charges contained in this case."[55] The explanations that followed from the AUSA, Addison's counsel, and the court confused the matter. According to some explanations, the prohibition on future charges was extremely narrow and only prevented the government from bringing an identical possession with the intent to distribute charge[56] or a conspiracy charge with the exact same co-conspirators as in *Evans*.[57] But at the same hearing, Addison was told that the plea agreement precluded the government from bringing additional charges "stemming out of the same set of facts as this case"[58] or "arising out of the same facts that brought this original conspiracy charge"[59] or "related to the facts of this case, that is, the initial conspiracy charged in this

---

[54]*Evans*, R. Doc. No. 397, at 1.

[55]*Evans*, R. Doc. No. 416, at 19.

[56]*Evans*, R. Doc. No. 416, at 20 ("outside of this possession with the intent to distribute charge, the Government is free to, by way of this Plea Agreement, free to charge him with any other violations of federal law").

[57]*Evans*, R. Doc. No. 416, at 20 ("the Government will not charge this Defendant of a conspiracy with the individuals listed in that Indictment").

[58]*Evans*, R. Doc. No. 416, at 20-21. The AUSA stated that this characterization of the agreement by Addison's counsel was "Correct." *Evans*, R. Doc. No. 416, at 21.

[59]*Evans*, R. Doc. No. 416, at 22.

Indictment,"[60] or "related to Mr. Evans and the distribution of heroin in that thing."[61] Still other explanations fell somewhere between these two extremes.[62]

The Court does note that nothing in the *Evans* record suggests that the U.S. District Judge presiding over Addison's guilty plea actually knew about or could possibly have foreseen the government's later attempt to base this conspiracy charge in part on the same nine ounces of heroin. Rather, only the AUSA could have been aware of the government's intent to bring future charges against Addison, and only the AUSA was in a position to draft the plea agreement and to ensure that it was explained to Addison in a way that would preserve the government's right to base future charges on the nine ounces of heroin.

Because of these inconsistent explanations, Addison could reasonably have understood the plea agreement to preclude additional charges based on the same nine ounces of heroin as "stemming from" or "related to" his "activities" with respect to Byron Evans or "arising out of the same facts that brought this original conspiracy charge." *Cf. United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008) (giving a "very broad interpretation" to language in plea agreement that government agreed not to prosecute crimes "arising out of the facts and circumstances . . .

---

[60]*Evans*, R. Doc. No. 416, at 21-22.

[61]*Evans*, R. Doc. No. 416, at 29-30; *see also Evans*, R. Doc. No. 416, at 23 ("[t]he Government will not charge you with any charges stemming from your activities from your conspiring with Byron Evans and the members of that drug-trafficking organization that you were charged with in that Indictment").

[62]*Evans*, R. Doc. No. 416, at 20 ("[a]ny charges that the Government would bring against Mr. Addison, if we brought additional charges, would be on a different conspiracy and different violation"); *Evans*, R. Doc. No. 416, at 21 ("I'm talking about a controlled substances conspiracy is still on the table, just not with these particular defendants out of these particular facts and circumstances"); *Evans*, R. Doc. No. 416, at 22 ("there is no intent to charge you with violation of controlled substances [laws] that come from that set of facts that is identified in the Indictment of this case in the First Superseding Bill of Information, but all bets are off related to any other criminal activity, including controlled substances law").

surrounding [the defendant's] involvement in the crimes addressed in the superseding indictment"). Construed in Addison's favor, therefore, the *Evans* plea agreement, as muddied by the rearraignment colloquy, prohibits the government from charging him with this conspiracy to the extent that it relates to the nine ounces of heroin underlying his guilty plea.

Although the government asserts that it will present other evidence against Addison, it still intends to prove this conspiracy as to Addison based in part on intrinsic and extrinsic evidence related to the nine ounces of heroin.[63] Based on the reasonable understanding of the plea agreement explained above, the *Evans* plea agreement bars the government from convicting Addison of this conspiracy charge based on intrinsic evidence related to the nine ounces of heroin. Accordingly, the Court finds it appropriate under these unusual circumstances to exclude evidence of the nine ounces of heroin from trial as intrinsic proof of Addison's participation in the conspiracy charged in count one of the superseding indictment.

As stated, the government also contends that Addison's purchase of the heroin from Evans is 404(b) evidence. This is a challenging evidentiary issue which the Court will defer until it is developed through additional briefing and at trial.

## C.   Motion to Sever

As an alternative to dismissal of count one, Addison moves for a separate trial, either because the charge against him is misjoined with the gun-related charges against other defendants, or because a joint trial will prejudice him. The government contends that the trial should proceed as charged.

### 1.   Misjoinder

Rule 8(b) of the Federal Rules of Criminal Procedure permits joinder of "2 or more

---

[63]R. Doc. No. 211, at 7-8.

defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." "Rule 8(b) does not require, however, that each defendant have participated in the same act or acts." *United States v. Krenning*, 93 F.3d 1257, 1266 (5th Cir. 1996). "All that is required is a series of acts unified by some substantial identity of facts or participants." *Id.* (internal quotation marks omitted).

The superseding indictment in this case satisfies Rule 8(b). Count one charges all defendants, including Addison, with a drug conspiracy.[64] Count two charges a subset of defendants with conspiracy "to possess firearms *in furtherance of drug trafficking crimes as alleged in this Superseding Indictment*."[65] Count two piggybacks on count one, and both are therefore "unified by some substantial identity of facts or participants." *See Krenning*, 93 F.3d at 1266. Addison is simply incorrect that the superseding indictment lacks an "overarching conspiracy,"[66] nor does he cite a single comparable drug-conspiracy case finding misjoinder. *See, e.g.*, *United States v. Morgan*, No. 13-151, 2014 WL 4443492, at *4 (E.D. La. Sept. 9, 2014) (Fallon, J.) (finding drug conspiracy count against defendant properly joined with firearms-related counts against other defendants because "[p]roof of the conspiracy charged in Count 1 is necessary to establish almost all of the additional charges"). Accordingly, the Court concludes that the joinder of the charge against Addison with the charges against the other defendants comports with Rule 8(b).

### 2.    Severance

"The federal judicial system evinces a preference for joint trials of defendants who are

---

[64]R. Doc. No. 174, at 2.
[65]R. Doc. No. 174, at 2-3 (emphasis added).
[66]R. Doc. No. 152-1, at 7.

indicted together because joint trials 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. McRae*, 702 F.3d 806, 821 (5th Cir. 2012) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)). "It is the rule, therefore, not the exception, that persons indicted together should be tried together, especially in conspiracy cases." *Id.* (internal quotation marks omitted). Rule 14(a) of the Federal Rules of Criminal Procedure authorizes separate trials of jointly-indicted defendants if the joinder "appears to prejudice a defendant." "Severance is proper only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *McRae*, 702 F.3d at 822 (internal quotation marks omitted). "When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened." *Zafiro*, 506 U.S. at 539. "[L]ess drastic measures [than severance], such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.*

Addison contends that if he is tried alongside co-defendants charged with gun-related counts, he "will be subjected to sit before a jury for a trial lasting possibly a month or more, in which sordid evidence and testimony will be introduced about four senseless killings and other acts of mayhem connected to the distribution of heroin and cocaine."[67] He asserts that "limiting instructions simply cannot eliminate the risk of jury confusion caused by the overwhelming prejudice of the spillover effect of the highly prejudicial and inflammatory photographs and testimony against the seven co-defendants charged in the Count Two firearms conspiracy."[68] The risk of prejudice is compounded

---

[67]R. Doc. No. 152-1, at 10.
[68]R. Doc. No. 165, at 8.

because, according to Addison, "the only direct evidence of [his] 'drug dealing'" includes the disputed recordings related to the nine ounces of heroin.[69] The government responds that a joint trial will be efficient and any potential prejudice to Addison can be mitigated by specific limiting jury instructions.[70]

For reasons not articulated by Addison, the Court finds that Addison faces a unique prejudice with respect to the introduction of intrinsic evidence related to the nine ounces of heroin if he is jointly tried with co-defendant, Harry Smoot. The government intends to introduce at trial both the factual basis in *Evans* which establishes Addison's receipt of the nine ounces of heroin from Evans,[71] as well as "recordings made from the Jefferson Parish Correctional Center, [in which] Addison calls co-defendant Harry Smoot from jail in order to arrange the distribution of nine ounces of heroin."[72] The government also intends to offer both Addison's receipt of the heroin and the alleged distribution of that nine ounces on Addison's behalf by Smoot as intrinsic evidence *as to Smoot*,[73] who is not protected by Addison's plea agreement. Evidence of Addison's connection to the nine ounces of heroin may be admissible against Addison pursuant to Rule 404(b) but, as explained above, it is not admissible as intrinsic evidence against Addison pursuant to his *Evans* plea agreement.

If Addison and Smoot are tried together, the jury would be required to consider the same

---

[69]R. Doc. No. 165, at 8.
[70]R. Doc. No. 158, at 13.
[71]R. Doc. No. 211, at 7-8.
[72]R. Doc. No. 155, at 2.
[73]R. Doc. No. 211, at 7-8. Although the government has not articulated how Addison's purchase and receipt of heroin from Evans is intrinsic evidence in this case as to Smoot, the government alleges that Addison received the nine ounces of heroin "in the company of Harry SMOOT." R. Doc. No. 211, at 7.

evidence for different purposes as to Addison and Smoot. The nine ounces of heroin are only admissible against Addison (if at all) pursuant to Rule 404(b), but may be admissible against Smoot as intrinsic proof of Smoot's participation in the charged conspiracy. The Court finds that this hair-splitting of the same evidence as to Addison and Smoot poses a serious risk of "prevent[ing] the jury from making a reliable judgment about [Addison's] guilt or innocence" which would deny Addison the protection of his plea agreement in *Evans*. The Court further concludes that the risk of prejudice cannot adequately be addressed with limiting instructions. Accordingly, the Court concludes that Addison's motion to sever should be granted and that his trial on the one-count drug conspiracy charge should be severed from the trial of Smoot and the other defendants presently scheduled for April 20, 2015.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Addison's motion to dismiss is **DENIED** with respect to dismissal of count one of the superseding indictment, but **GRANTED** insofar as the government shall not introduce any intrinsic evidence or testimony at Addison's trial related to the nine ounces of heroin.

**IT IS FURTHER ORDERED** that the question of the potential admissibility of such evidence pursuant to Rule 404(b) is **DEFERRED**.

**IT IS FURTHER ORDERED** that Addison's motion to sever is **GRANTED** and that  on or before Wednesday, March 25, 2015, the defendant, Andre Addison, may file a motion to continue his trial.

New Orleans, Louisiana, March 19, 2015.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**